UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT C. TAYLOR,                              Case No.: 17-11473

     Plaintiff,                              Nancy G. Edmunds
v.                                             United States District Judge

UNIVERSITY OF MICHIGAN,                        Stephanie Dawkins Davis
                                               United States Magistrate Judge

     Defendant.

_____/

**REPORT AND RECOMMENDATION
DEFENDANT'S MOTION TO DISMISS (Dkt. 9) and PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THE COMPLAINT (Dkt. 15)**

## I.     PROCEDURAL HISTORY

Plaintiff brought this action *pro se* under Title I of the Americans with

Disabilities Act, 42 U.S.C. § 12111 *et seq.* (Dkt. 1). District Judge Nancy G.

Edmunds referred pretrial matters in this case to the undersigned on June 28, 2017.

(Dkt. 10). On June 28, 2017, defendant University of Michigan filed its motion to

dismiss. (Dkt. 9). Plaintiff responded, (Dkt. 13), and defendant replied. (Dkt. 14).

On December 1, 2017, plaintiff filed a motion for leave to file an amended

complaint. (Dkt. 15). Defendant responded. (Dkt. 16).

## II.   FACTUAL BACKGROUND AND PARTIES' ARGUMENTS

### A.   Plaintiff's Complaint

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on June 6, 2016, alleging that his employer, defendant University, discriminated against him in violation of the Americans with Disabilities Act ("ADA").  (Dkt. 1, Complaint, at ¶ 7).  On February 7, 2017, the EEOC closed the file indicating that it could not conclude there was a statutory violation, but it did not certify that defendant had complied with the statutes.  (*Id.* at ¶¶ 8-9).  Plaintiff alleges that he is an individual with a disability within the meaning of 42 U.S.C. § 12101 and 29 C.F.R. § 1630.2 that limits his ability to bend, lift, stoop, and repeat movements.  (*Id.* at ¶ 10).

In August 2013, plaintiff sustained an injury while performing his job duties as an employee at the University of Michigan in the Custodian II position; specifically, he injured himself while running a buffer machine.  (*Id.* at ¶ 14).  Plaintiff immediately sought medical attention on behalf of defendant.  (*Id.* at ¶ 15).  Due to his injuries, plaintiff had surgery to repair a torn rotator cuff.  (*Id.* at ¶ 16).  After this surgery, he was advised that he could perform some work with restrictions on lifting and overhead reaching.  (*Id.* at ¶ 18).  Plaintiff requested this accommodation but alleges that defendant did not offer any reasonable accommodation within his current role or any other role for which plaintiff was

qualified.  Instead, defendant recommended that plaintiff stay home on medical leave under the Worker's Compensation provisions.  (*Id.*).  On July 11, 2014, plaintiff returned to work after his shoulder surgery, but injured his neck a week later while working.  (*Id.* at ¶ 20).  Plaintiff requested accommodation based on the recommendation of his treating physician, which included no use of the right arm or hand, but defendant refused to accommodate plaintiff.  (*Id.* at ¶ 21).  In early 2015, plaintiff's doctor advised that he should have surgery to repair his neck injury.  (*Id.* at ¶ 23).  Plaintiff made multiple requests for accommodation within his restrictions, by notifying his direct supervisor, who he believes directed these requests to her Area Manager, who refused to accommodate plaintiff in his current role or another role for which he was qualified.  (*Id.* at ¶ 24).  An independent medical examiner hired by defendant provided a summary that contradicted the recommendation of several of plaintiff's treating physicians.  (*Id.* at ¶ 26).  Plaintiff was told to return to work in June 2015 and was advised that he would lose his job if he failed to do so.  (*Id.* at ¶ 27).  Defendant was aware that plaintiff was scheduled for neck surgery in August 2015.  (*Id.* at ¶ 28).

Plaintiff returned to work on June 24, 2015 in the role of "Light Duty Specialist."  (*Id.* at ¶ 29).  This job is within the OS1 cleaning model adopted by defendant's Department of Building Services.  Part of the job description includes removing trash, which involves lifting and moving bags up to 50 pounds, and

vacuuming floors and stairwells using a backpack vacuum cleaner. (*Id.* at ¶ 29). Plaintiff again requested an accommodation based on work restrictions advised by his treating doctors, but defendant provided no accommodation. (*Id.* at ¶ 30). After removing trash bags plaintiff told his supervisor he was experiencing severe pain. His supervisor instructed him to see a doctor. The doctor suggested that the lifting aggravated his existing injuries and advised that he remain off work on medical leave for several days. (*Id.* at ¶ 31). Plaintiff's supervisor and Area Manager called him and told him he must return to work or he would lose his job. (*Id.* at ¶ 32). On July 1, 2015, plaintiff returned to work and again requested and was denied an accommodation to limit strain and impact on his neck. (*Id.* at ¶ 34). While using the vacuum equipment, plaintiff's foot got caught in the cord and he fell, hitting his head on a cement wall and falling down a portion of a flight of stairs. Plaintiff exacerbated his existing injuries and sustained an additional injury to his lower back. (*Id.* at ¶ 35). Plaintiff went to the emergency room and was advised to stay home from work and see a specialist. (*Id.* at ¶ 36). On August 31, 2015, plaintiff underwent surgery on his neck. Defendant was advised of this surgery. However, defendant terminated plaintiff's employment prior to the surgery on the grounds that plaintiff failed to provide sufficient information regarding his injuries. (*Id.* at ¶¶ 38-39). Plaintiff alleges he was not given timely

notice of his termination, and was instead notified by representatives from the AFSME trade union.  (*Id.* at ¶ 40).

Count I of plaintiff's complaint is a claim under Title I of the ADA.  It alleges that defendant failed to provide plaintiff a reasonable accommodation for his physical restrictions which constitutes discrimination on the basis of disability. As a result of defendant's conduct, plaintiff claims he suffered and continues to suffer damages.  (*Id.* at ¶¶ 50-56).  Count II, also brought under Title I of the ADA, alleges that defendant has a pattern or practice of placing employees back to work as Light Duty Specialist, which does not meet the definition of "reasonable accommodation."  Defendant's representation that Light Duty Specialist is an accommodation constitutes an ongoing pattern or practice of discrimination on the basis of disability, and plaintiff states that unless this Court restrains further action, defendant will continue this practice of discrimination.  Plaintiff also points out that on July 22, 2015, defendant entered a Consent Decree with the United States related to this pattern or practice of discriminatory activity.  (*Id.* at ¶¶ 57-62).

B.    Defendant's Motion to Dismiss

Defendant seeks dismissal of plaintiff's complaint under Fed. R. Civ. P. 12(b)(1).  Defendant argues that it is immune from plaintiff's Title I ADA claims under the doctrine of sovereign immunity granted by the Eleventh Amendment. (Dkt. 9, at p. 1).  Under the doctrine of sovereign immunity, a state entity may not

be forced to stand suit in federal court in law or equity unless Congress abrogates that immunity via federal law or unless the state consents to suit.  (*Id.* at p. 2).

Defendant argues that the University is a state entity protected by sovereign immunity.  The Regents of the University of Michigan is a constitutional body corporate established and existing pursuant to the Michigan Constitution of 1963, Article VIII, § 5.  (*Id.*).  The Michigan Supreme Court has expressly stated that "[t]he Legislature has included 'public university[ies] in its definition of 'State' for purposes of immunity."  (*Id.*) (citing *Vargo v. Saucer*, 457 Mich. 49 (1998). Courts in the Sixth Circuit have also held that the Regents of the University of Michigan is an arm of the state protected by sovereign immunity.  (*Id.* at p. 3) (citing *Ewing v. Board of Regents of the University of Michigan*, 552 F. Supp. 881 (E.D. Mich. 1982); *Estate of Ritter by Ritter v. University of Michigan*, 851 F.2d 846, 850-51 (6th Cir. 1988).

According to defendant, the Eleventh Amendment bars claims under Title I of the ADA for monetary or injunctive relief.  (*Id.* at 3).  Defendant also argues that the Eleventh Amendment bars all claims against the University for money damages and injunctive relief under *Pennhurst St. School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984).  (*Id.* at p. 4).  Finally, defendant states that the University has not waived its sovereign immunity and that it does not consent to this suit.  (*Id.*).

In response, plaintiff argues that Title II of the ADA extends the obligations of Title I to the States.  (Dkt. 13, at p. 8).  Specifically, § 35.178 states that a State is not immune from suit under the Eleventh Amendment for a violation of this Act.  (*Id.*).  Even if such abrogation of immunity is not to be extended in this matter, the immunity would not limit injunctive relief.  (*Id.*).  Plaintiff asserts that even if this Court dismissed his complaint for lack of jurisdiction, the Department of Justice would not be barred from bringing an action against defendant related to the factual matters alleged in plaintiff's complaint.  (*Id.*).  Plaintiff also asserts that a dismissal here would not limit a state cause of action related to the facts underlying this matter.  (*Id.*).

In reply, defendant argues that plaintiff has not alleged a claim under Title II of the ADA, but only under Title I.  (Dkt. 14, at p. 1-2).  Further, the Sixth Circuit has held that an employment discrimination claim may only be filed under Title I of the ADA.  (*Id.* at p. 2) (citing *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997).  Defendant is immune from suit under Title I.  (*Id.* at p. 1).

C.    Plaintiff's Motion to Amend Complaint

Plaintiff filed a motion for leave to file an amended complaint on December 1, 2017.  (Dkt. 15).[1]  The proposed complaint retains the two Counts in the original

---

[1] Counts I and II in the proposed amended complaint are identical to Counts I and II of the original complaint on which defendant seeks dismissal.  (Compare Dkt. 1, at ¶¶ 50-62 with Dkt.

complaint and adds three new claims: Count III - discrimination in violation of the Rehabilitation Act; Count IV - Retaliation, Interference, Coercion, and/or Intimidation of Plaintiff for Exercising Rights under the Rehabilitation Act (retaliation in violation of the Rehabilitation Act); and Count V - Retaliation, Interference, Coercion, and/or Intimidation of Plaintiff for Exercising Rights under the ADA (retaliation in violation of the ADA).

In response, defendant states that it does not object to the proposed amendment adding Count III under the Rehabilitation Act.  (Dkt. 16, at p. 2).  However, defendant argues that the addition of Counts IV and V would be futile because neither were raised in plaintiff's EEOC charge, nor were they filed within the 90-day statute of limitations after plaintiff received the Right to Sue Notice from the EEOC.  (*Id.*).  Under the Rehabilitation Act, a plaintiff is required to exhaust administrative remedies by filing a charge with the EEOC.  (*Id.* at p. 4).  Such a plaintiff cannot bring claims in a lawsuit that were not included in the charge with the EEOC.  (*Id.*).  In his EEOC charge, plaintiff did not check off the box indicating that he was alleging retaliation nor does his description of the charge include retaliation.  (*Id.*).  Further, the Sixth Circuit has held that a complaint under the Rehabilitation Act must be filed within 90 days of receipt of

---

15, at ¶¶ 53-65).  Therefore, in the interest of judicial economy, the undersigned deems it prudent to address plaintiff's motion to amend in the context of this recommendation.

the EEOC's Right to Sue Letter.  (*Id.* at p. 5).  And, motions to amend the

complaint to add a claim after the 90-day period expired are denied.  (*Id.*) (citing

*Reynolds v. Solectron Global Servs.*, 358 F. Supp. 2d 688 (W.D. Tenn. 2005) and

*Simns v. Maxim Healthcare Servs., Inc.*, 2013 WL 435293 (W.D. Tenn. 2013).

Defendant further argues that the amendment to add the retaliation claims does not

relate back to the date of the original filing again because his EEOC charge did not

include a retaliation claim.  (*Id.* at p. 6-7).

Finally, defendant argues that the new ADA claim in Count V is barred by

sovereign immunity for the same reasons Counts I and II are barred by sovereign

immunity.  (*Id.*).

## III.    DEFENDANT'S MOTION TO DISMISS (Dkt. 9)

### A.    <u>Standard of Review</u>

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the

plaintiff has the burden of proving jurisdiction in order to survive the motion."

*Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  Further, a district

court may "resolve factual disputes when necessary to resolve challenges to subject

matter jurisdiction."  *Id.*  Motions to dismiss for lack of subject matter jurisdiction

fall into two general categories: facial attacks and factual attacks.  *United States v.*

*Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack on subject matter

jurisdiction goes to whether the plaintiff has properly alleged a basis for subject

matter jurisdiction, and the trial court takes the allegations of the complaint as true.

*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  A

factual attack is a challenge to the factual existence of subject matter jurisdiction.

No presumptive truthfulness applies to the factual allegations, and the court is free

to weigh the evidence and satisfy itself as to the existence of its power to hear the

case.  *Ritchie*, 15 F.3d at 598.  In matters regarding subject matter jurisdiction, the

court may look to evidence outside the pleadings.  *Nichols v. Muskingum College*,

318 F.3d 674, 677 (6th Cir. 2003).

The Sixth Circuit adheres to the standard of review for Rule 12(b)(1)

motions explained in *Mortensen v. First Federal Savings and Loan Ass'n*, 549

F.2d 884, 890 (3d Cir. 1977):

> The basic difference among the various 12(b) motions is,
> of course, that 12(b)(6) alone necessitates a ruling on the
> merits of the claim, the others deal with procedural
> defects.  Because 12(b)(6) results in a determination on
> the merits at an early stage of plaintiff's case, the plaintiff
> is afforded the safeguard of having all its allegations
> taken as true and all inferences favorable to plaintiff will
> be drawn.  The decision disposing the case is then purely
> on the legal sufficiency of plaintiff's case: even were
> plaintiff to prove all its allegations he or she would be
> unable to prevail.  In the interests of judicial economy it
> is not improper to dispose of the claim at that stage....
>
> The procedure under a motion to dismiss for lack of
> subject matter jurisdiction is quite different.  At the
> outset we must emphasize a crucial distinction, often
> overlooked between 12(b)(1) motions that attack the
> complaint on its face and 12(b)(1) motions that attack the

existence of subject matter jurisdiction in fact, quite apart from any pleadings.  The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true.  The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen*, 549 F.2d at 890-891).

    B.   <u>Sovereign Immunity</u>

"Because Title I [of the ADA] did not abrogate the states' Eleventh Amendment immunity, individuals may not sue states for money damages under Title I."  *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 374 (2001)).  *Ex parte Young* provides an exception to Eleventh Amendment immunity when individuals seek prospective injunctive relief for Title I violations.  *Id.* (citing *Ex parte Young,* 209 U.S. 123 (1908)).  "An *Ex parte Young* action may be commenced only against a state official acting in her official capacity and may 'seek [only] prospective relief

to end a continuing violation of federal law.'"  *Whitfield*, 639 F.3d at 257 (quoting

*Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir.2002)).

Here, however, the *Ex parte Young* exception to Eleventh Amendment

immunity does not apply to defendant University of Michigan.  "[T]he exception is

narrow: It applies only to prospective relief, does not permit judgments against

state officers declaring that they violated federal law in the past, and *has no*

*application in suits against the States and their agencies, which are barred*

*regardless of the relief sought*."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf &*

*Eddy, Inc.*, 506 U.S. 139, 146 (1993) (internal citations omitted) (emphasis added);

*Kentucky Mist Moonshine, Inc. v. Univ. of Kentucky*, 192 F. Supp. 3d 772, 784

(E.D. Ky. 2016) ("Because *Ex parte Young* applies only to state officials, this

doctrine does not apply as an exception to Eleventh Amendment immunity in this

case."); *Kirby v. N. Carolina State Univ.*, 2015 WL 1036946, at *9 n. 3 (E.D.N.C.

Mar. 10, 2015), *aff'd*, 615 Fed. Appx. 136 (4th Cir. 2015) ("Although *Ex Parte*

*Young,* 209 U.S. 123 (1908) recognized an exception under the Eleventh

Amendment for prospective injunctive relief, the Supreme Court has subsequently

specified that it applies only to state officials and not a state or its

instrumentalities."); *Johnson v. Sw. Tennessee Cmty. Coll.*, 2010 WL 1417739, at

*3 (W.D. Tenn. Mar. 31, 2010) ("The exception of *Ex parte Young,* 209 U.S. 123

(1908), does not apply here because Johnson has sued only a state agency, and not

any state officials.").  In *Kirby*, because North Carolina State University is an instrumentality of the state, and the plaintiff made no showing that the University had waived its Eleventh Amendment immunity from suit, the University was protected by the Eleventh Amendment from all claims, regardless of the nature of the relief sought.  2015 WL 1036946 at *9.

The University of Michigan is a State agency or instrumentality.  "The [Michigan] Legislature included "public universit[ies]" in its definition of the "State" for purposes of immunity."  *Vargo v. Sauer*, 457 Mich. 49, 66 (1998) (citing Mich. Comp. Laws § 691.1401(c)).  Further, Michigan courts have held that the Board of Regents of the University of Michigan is a department of the State government created by the Michigan constitution to carry out state functions. *Estate of Ritter by Ritter v. University of Michigan*, 851 F.2d 846, 850 (6th Cir. 1988).  "Concerning universities within Michigan, the federal district courts have found that Michigan Technological University, University of Michigan and Michigan State University all are entitled to immunity under the Eleventh Amendment."  *Williams v. Michigan State Univ.*, 1994 WL 617272, at *4 (W.D. Mich. Jan. 3, 1994).  Like in *Johnson*, *supra*, plaintiff has not sued any state officials; rather, his complaint is against the University of Michigan.  Therefore, as in *Kirby* and *Johnson*, the Eleventh Amendment bars suit against defendant, regardless of the relief sought; thus, this Court does not have subject matter

jurisdiction to entertain plaintiff's claims and the undersigned recommends that the motion to dismiss be **GRANTED**.

## IV.   PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (Dkt. 15)

Because plaintiff filed his motion to amend more than 21 days after defendant filed its motion to dismiss, plaintiff may not amend as of right under Fed. R. Civ. P. 15. Plaintiff can amend his complaint only by leave of the Court. Rule 15(a) provides that such "leave shall be freely given when justice so requires." In *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593 (6th Cir. 2001), the court listed several factors to consider in order to decide whether to allow an amendment: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Id.* at 605.

The Court need not grant leave to amend where the amendment would be "futile." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)). A complaint may be dismissed under Rule 12(b)(6) when the plaintiff fails to state a claim on which relief can be granted. Fed. R. Civ. P.

12(b)(6). A motion to dismiss under Rule 12(b)(6) is "interpreted in conjunction with Federal Rule of Civil Procedure 8, requiring a short and plain statement of the claim." *Chesbrough v. VPA*, *P.C.*, 655 F.3d 461, 467 (6th Cir. 2011). The purpose of Rule 8 is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

As an initial matter, in its response, defendant has consented to plaintiff's addition of Count III – Discrimination in violation of the Rehabilitation Act - of the proposed amended complaint. Therefore, based on defendant's consent, the undersigned recommends that plaintiff be permitted to add that claim. The remaining counts do not fare as well, as discussed below.

Plaintiff's proposed amended complaint does not remedy the deficiencies of Counts I and II highlighted above, and thus amendment as to them would be futile. Although the proposed amended complaint changes the caption to read "The University of Michigan (a/k/a Regents of the University of Michigan,)" (Dkt. 15,

Proposed Amended Complaint), this change does not alter the University's immunity in Counts I and II.  The Regents of the University of Michigan is immune from suit for monetary and retrospective relief.  *See Martinson v. Regents of the University of Michigan*, 2011 WL 13124122, at *4 (E.D. Mich. Sept. 28, 2011) (holding that, under the Eleventh Amendment, the Regents, as a state entity, sued in its official capacity for damages or other retrospective relief is not subject to liability).

To the extent plaintiff has named the Regents as defendant in order to obtain prospective injunctive relief (he seeks reinstatement of his employment), the result does not change.  *Ex Parte Young* does not apply to suits against the State or its agencies.  *Saltz v. Tennessee Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) ("The essential ingredients of the *Ex parte Young* doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect."); *Barrett v. Univ. of New Mexico Bd. of Regents*, 562 Fed. Appx. 692, 694 (10th Cir. 2014) (where Board of Regents must act as "a body corporate" and not as individual state officials, claim for prospective injunctive relief is barred); *Lacy v. Ohio Dep't of Job & Family Servs.*, 2017 WL 1397522, at *3 (S.D. Ohio Apr. 19, 2017) ("The sole named defendant in Ms. Lacy's complaint is ODJFS.  Thus, without naming at least one state official in his or her official

capacity as a defendant, the complaint fails to state a Title I claim over which the Court has jurisdiction."); *Booher v. Bd. of Regents, N. Kentucky Univ.*, 1998 WL 35867183, at *5 (E.D. Ky. July 22, 1998) (claims for injunctive relief against the Board of Regents and not against the individual members of the Board would be barred). Plaintiff has not named individual members of the Board of Regents.

The Board of Regents is a state agency and named a body corporate under Michigan law. Mich. Const. art. VIII, § 5 ("The regents of the University of Michigan and their successors in office shall constitute a body corporate known as the Regents of the University of Michigan."); *see also Martinson*, 2011 WL 13124122, at *4 ("The University of Michigan Board of Regents (hereinafter "the University" or the "Board") has long been considered an arm of the state for purposes of Eleventh Amendment immunity. *Estate of Ritter v. University of Michigan, et al.*, 851 F.2d 846, 851 (6th Cir. 1988) (concluding that the University of Michigan Board of Regents is unquestionably a state agency to which the Eleventh Amendment applies absent a waiver of that immunity)."). The Board of Regents is therefore immune from suit for prospective injunctive relief.

Aside from changing the caption to read "Regents of the University of Michigan," the proposed complaint also does not name any new parties. Plaintiff states that defendant is the University. (Dkt. 15 at ¶ 5). Plaintiff attempts to define "defendant" to include multiple University of Michigan entities and "others acting

17

on their own or an [sic] behalf of the University of Michigan, including Collette

Donner." (*Id.* at ¶ 7).  In paragraphs 35 and 37 of the proposed amended complaint

plaintiff discusses area manager Collette Donner and incorporates those allegations

by reference into each count of the complaint.  However, even if plaintiff had

properly added the new defendants to the complaint via this definitional paragraph,

the complaint would still be dismissed because it cannot be discerned which

allegations plaintiff made against which parties. *See Kerrigan v. ViSalus, Inc.*,

2018 WL 534485, at *2-4 (E.D. Mich. Jan. 24, 2018) (The plaintiff's attempt to

"lump" various defendants together under different, imprecise terms left the court

unable to decipher which allegations plaintiff made against which defendants.

Thus, the court dismissed the complaint but allowed the plaintiff to file a fourth

amended complaint.).  Moreover, in each count plaintiff uses "defendant" in the

singular just as he did in the original complaint, leading to the conclusion that he is

only discussing the University.  And, plaintiff does not indicate whether Collette

Donner is being sued in her individual or official capacity.  Therefore, the

proposed amended complaint does not remedy the deficiencies highlighted above.

Amendment of the complaint as to Counts I and II would be futile.

Plaintiff's motion to amend the complaint to add Count IV - Retaliation,

Interference, Coercion, and/or Intimidation of Plaintiff for Exercising Rights under

the Rehabilitation Act, is also futile because plaintiff failed to exhaust

administrative remedies on the issue of retaliation.  A plaintiff cannot pursue

claims under the Rehabilitation Act, like Title VII of the Civil Rights Act, unless

all administrative remedies have first been exhausted.  *Mickulicz v. Garthwaite*,

229 F.3d 1153 (Table), 2000 WL 1234326, at *1 (6th Cir. 2000) (citing *Smith v.*

*United States Postal Serv*., 742 F.2d 257, 258-62 (6th Cir.1984)).  "Although

claims that an employer retaliated in response to an earlier charge need not be

exhausted, retaliatory conduct that occurs prior to the filing of the EEOC complaint

is distinguishable from such claims, and must be exhausted."  *Spence v. Donahoe*,

515 Fed. Appx. 561, 572 (6th Cir. 2013) (citing *Ang v. Procter & Gamble Co*., 932

F.2d 540, 546–47 (6th Cir.1991)) (internal citations omitted).  A charge with the

EEOC must be "sufficiently precise to identify the parties, and to describe

generally the action or practices complained of."  *Younis v. Pinnacle Airlines, Inc.*,

610 F.3d 359, 361 (6th Cir. 2010) (citation omitted).  The purpose of the

exhaustion rule is to provide "the employer [with] information concerning the

conduct about which the employee complains, as well as affording the EEOC and

the employer an opportunity to settle the dispute."  *Id.*

In *Younis*, the Sixth Circuit dismissed the plaintiff's hostile work

environment and retaliation claims under Title VII of the Civil Rights Act because

the plaintiff failed to allege those claims in his EEOC charge by either checking

the appropriate box on the form or by raising allegations supporting those claims in

the narrative portion of the EEOC charge.  *Id.* at 362-63.  Likewise, here, plaintiff neither checked off the box indicating that he was bringing a retaliation claim, nor does the narrative portion of the charge indicate that plaintiff was bringing a retaliation claim.  (Dkt. 16, Exhibit A—EEOC charge form, Pg ID 95).  Plaintiff only checked the box indicating that he was filing a disability discrimination claim under the ADA and his narrative discussed only denial of reasonable accommodation due to his disability.  (*Id.*); *see also Evans v. University of Michigan Hospital*, 2017 WL 1382295, at *2-3 (E.D. Mich. Apr. 14, 2017) (discussing dismissal of retaliation claim because the plaintiff failed to check off the "retaliation" box on the EEOC charge form and did not allege retaliation in the statement of her charge of disability discrimination for lack of accommodation).  Therefore, adding the retaliation claim under the Rehabilitation Act would be futile, and the motion to amend the complaint to add that claim should be **DENIED**.

Plaintiff's proposed Count V – retaliation in violation of the ADA, appears to be a claim under Title V of the ADA, alleging retaliation against defendant for opposing acts or practices for an alleged violation of Title I of the ADA.  (Dkt. 15, at p. 16); *see* 42 U.S.C. § 12203 (Title V prohibits retaliation, interference, coercion, or intimidation with respect to individuals invoking the protection of Titles I through III).  Defendant argues it is protected by Eleventh Amendment

immunity on this claim for the same reasons it is protected against liability under

Counts I and II of the complaint, as explained above.  Defendant is correct that it is

protected by Eleventh Amendment immunity, but it is protected because

"immunity is not abrogated for Title V claims when those claims derive from

employment discrimination in violation of Title I."  *Davis v. Gordon*, 251 F. Supp.

3d 1211, 1214 (M.D. Tenn. 2017).

Neither the Supreme Court nor the Sixth Circuit has decided whether Title V

abrogates a state's Eleventh Amendment immunity.  However, courts that have

addressed the issue distinguish between claims based upon Title I or Title II of the

ADA.  As demonstrated above, the State is immune from liability for claims

coming under Title I.  *See Garrett*, 531 U.S. at 374.  Based on this principle,

"courts have held that immunity is not abrogated for Title V claims when those

claims derive from employment discrimination in violation of Title I."  *Davis*, 251

F. Supp. 3d at 1214.  The *Davis* court provided a thorough analysis of the issue:

> [I]n *Demshki v. Monteith*, 255 F.3d 986 (9th Cir. 2001),
> the Ninth Circuit held that a plaintiff's Title V claim
> against the California Senate Rule Committee—a state
> agency—was barred, writing:
>
>> We recognize that Garrett arose in the
>> context of Title I, but we nevertheless
>> conclude that the Court's holding necessarily
>> applies to claims brought under Title V of
>> the ADA, at least where, as here, the claims
>> are predicated on alleged violations of Title
>> I. Title V prohibits discrimination against an

> employee who opposes an "act or practice made unlawful" by the substantive provisions of the ADA.  42 U.S.C. § 12203.  There is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled.  Absent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims.

*Id.* at 988–89.  Based on *Demshki's* lead, numerous other courts have followed suit.  *See e.g., Ilarraza–Rodriguez v. Puerto Rico*, 2017 WL 1048061, at *4 (D.P.R. Mar. 17, 2017); *Cook v. Springfield Hosp. Ctr.*, 2016 WL 6124676, at *7 (D. Md. Oct. 19, 2016); *Emery v. Michigan Dep't of Civil Rights*, 2016 WL 1090429, at *2 (E.D. Mich. Mar. 21, 2016); *Banner v. Dep't Health & Soc. Servs. Div. for the Visually Impaired*, 2016 WL 922058, at *4 (D. Del. Mar. 10, 2016); *Lucas v. State of Alabama Dep't of Pub. Health*, 2016 WL 335547, at *4 (M.D. Ala. Jan. 7, 2016); *Rich v. New Jersey*, 2015 WL 2226029, at *8 (D.N.J. May 12, 2015); *Marx v. Ga. Dep't of Corrs.*, 2013 WL 5347395, at *4 (M.D. Ga. Sept. 23, 2013).

Even though many more cases can be cited for the foregoing proposition, it suffices to note that "[c]ourts have uniformly held that retaliation claims premised on employment discrimination under Title I of the ADA are subject to the Eleventh Amendment," *Dugger v. Stephen F. Austin State Univ.*, 232 F.Supp.3d 938, 951, 2017 WL 478297, at *9 (E.D. Tex. Feb. 6, 2017) (collecting cases), and Plaintiff does not suggest otherwise.

Therefore, in light of the foregoing case law, because plaintiff's Title V claim of retaliation under the ADA is premised on actions he took to complain of

or oppose an alleged violation of Title I of the ADA, the claim is barred by Eleventh Amendment sovereign immunity. An amendment adding plaintiff's proposed Count V to the complaint would be futile. Therefore, plaintiff's motion to amend the complaint to add Count V should be **DENIED**.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that defendant's motion to dismiss (Dkt. 15) be **GRANTED**.

The undersigned further **RECOMMENDS** that plaintiff's motion to amend the complaint (Dkt. 15) be **GRANTED IN PART** and **DENIED IN PART**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  February 23, 2018                    s/Stephanie Dawkins Davis
                                            Stephanie Dawkins Davis
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 23, 2018, I electronically field the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record and that I have mailed by United States Postal
Service to the following non-ECF participant: Robert C. Taylor, 208 E. Cross
Street, Ypsilanti, MI 48198.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov