UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TAYLOR,                          Case No.: 17-11473

      Plaintiff,                        Nancy G. Edmunds
v.                                      United States District Judge

UNIVERSITY OF MICHIGAN,                 Stephanie Dawkins Davis
                                        United States Magistrate Judge

      Defendant.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 48)

## I.    PROCEDURAL HISTORY

Plaintiff, Robert Taylor ("Taylor"), filed a claim of disability-based discrimination on May 8, 2017.[1]  (ECF No. 1).  On June 28, 2017, District Judge Nancy G. Edmunds referred all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B).[2]  (ECF No. 10).

---

[1] Taylor initially brought this action under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-17.  However, as discussed below, the only claim that is presently before the court is one of disability-based discrimination under section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701 to 718 ("Rehabilitation Act").

[2] 28 U.S.C. § 636(b)(1)(B) provides that a judge may designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition of, *inter alia*, a motion for summary judgment.

On June 28, 2017, Defendant, University of Michigan ("UM"), filed a motion to dismiss, claiming that it is immune from Taylor's claims under the doctrine of sovereign immunity.  (ECF No. 9, PageID.34).  Thereafter, on December 1, 2017, Taylor filed a motion for leave to file an amended complaint to add, among other things, a claim of disability discrimination under the Rehabilitation Act.  (ECF No. 15).  On February 23, 2018, the undersigned issued a Report and Recommendation, wherein it was recommended that: (1) Taylor's claims of disability-based discrimination and retaliation under the ADA be dismissed pursuant to the doctrine of sovereign immunity (ECF No. 19, PageID.148-151, 153-154); (2) Taylor's claim of retaliation under the Rehabilitation Act be dismissed due to his failure to exhaust his administrative remedies (ECF No. 19, PageID.151-152); and (3) Taylor's claim of disability-based discrimination under the Rehabilitation Act be permitted, as UM had consented to same (ECF No. 19, PageID148).  Neither party filed an objection to the undersigned's Report and Recommendation.  On March 14, 2018, Judge Edmunds adopted the undersigned's recommendation, and, on March 30, 2018, and Taylor amended his complaint to add a claim of disability discrimination under the Rehabilitation Act.  (ECF Nos. 20, 22).  Specifically, Taylor alleged that UM "subject[ed him] to disparate treatment, discrimination, harassment, hostile work

environment, failed to accommodate and/or wrongfully terminated his employment because of his disability . . . ."[3]  (ECF No. 22, PageID.172).

On July 25, 2019, UM filed a motion for summary judgment, arguing that Taylor failed to state a *prima facie* case for discrimination, and that, even if he had, UM articulated a legitimate, non-discriminatory reason for terminating Taylor's employment.  (ECF No. 48, PageID.502-503).  Taylor filed a response on August 15, 2019, and UM filed a reply on August 29, 2019.  On September 26, 2019, a hearing on UM's motion for summary judgment was held before the undersigned.  Upon consideration of the moving papers, exhibits, and arguments presented at the hearing, the undersigned **RECOMMENDS** that the instant motion be **GRANTED**.

## II.    FACTUAL BACKGROUND

Taylor was hired by UM as a Custodian II on October 31, 1998, working in Plant Building and Grounds Services.  (ECF No. 50-2, PageID.777).  A Custodian II is responsible for providing floor care for UM's medical campus, among other things.  (*See* ECF No. 50-2, PageID.778-779; *see also* ECF No. 48-2, PageID.533-534 (providing a written description of position)).  Taylor also trained new employees and others on proper floor care.  (ECF No. 50-2, PageID.778-779).

---

[3] In the moving papers, neither UM nor Taylor reference a claim of harassment or hostile work environment.  All that is discussed is a claim of disability-based discrimination under the Rehabilitation Act.

A. Taylor's August 26, 2013 Injury

On August 26, 2013, Taylor strained his lower back and right shoulder while performing floor care.  (*See* ECF No. 48-4, PageID.545; *see also* ECF No. 50-9, PageID.958 (same)).  UM's Occupational Health Services ("OHS") examined Taylor on September 3, 2013 and determined that he was able to return to work with no restrictions.  (*See* ECF No. 48-6, PageID.557).  But later, on October 10, 2013, OHS staff examined Taylor again and this time, issued him work restrictions.[4]  (*See id.*)  Following this visit, Taylor was placed off work and awarded worker's compensation benefits.  (*See* ECF No. 51-15, PageID.1329).  He also underwent physical therapy.  (*See id.*)  When Taylor's supervisor, Karen Zarza, and Taylor's manager, Collette Donner, learned that Taylor would be off work, Ms. Donner commented, via emailed dated October 15, 2013, as follows:

> Seems suspicious though that he's been fine up until his DLO.  Makes you go hmmmmm.  These people are going to cost us all our jobs.  Who know how the new president will feel?  Going to come a point with obama [sic] care, fmla, sick and comp cases that they may contract it out.  Let's see how these folks feel working for $10.00 an hour.  sigh [sic], heavy sigh.

(ECF No. 51-15, PageID.1329).

---

[4] Specifically, a maximum of 10 pounds lifting with the right arm and no overhead reaching with same.

4

On November 21, 2013, Taylor again saw health professionals at OHS and received still stricter work restrictions.[5]  (*See* ECF No. 48-6, PageID.558).  Four days later, Kristen Brancheau, the Business Manager for Buildings and Grounds, advised that "we cannot accommodate these restrictions."[6]  (ECF No. 48-6, PageID.559).  As a result, Taylor remained off work and drew worker's compensation payments.  (ECF No. 48-6, PageID.560).  During this time, Taylor continued to receive physical therapy and, on March 19, 2014, he underwent right shoulder rotator cuff repair by Dr. Mark Pinto, an orthopedic surgeon.  (ECF No. 48-8, PageID.602).

B. Taylor's July 11, 2014 Injury and Dr. Lee's Examination

Taylor retuned to work on June 23, 2014.  (ECF No. 48-6, PageID.571-572).  But, on July 11, 2014, he suffered a second injury; he strained his shoulder and neck while filling a power scrubber with water.  (ECF No. 50-2, PageID.785-787; *see also* ECF No. 48-7, PageID.581 (same)).  Taylor remained off work until mid-2015, except for one eight-hour period in June 2014.  (ECF No. 48, PageID.511-

---

[5] Specifically, a five-pound limit on lifting, pushing, or pulling with his right arm; no overhead reaching with his right arm; no overhead reaching with his right arm; no activities above the chest; and no forceful or repetitive grasping with the right hand.

[6] On November 26, 2013, Kristin Brancheau, the Business Manager for Custodial and Grounds Services, stated via email that "[h]is restrictions are really difficult, as he can basically only perform work one handed and then can't lift anything, which removes the vacuum specialist, light duty specialist and most of the restroom specialist duties."  (ECF No. 48-6, PageID.561; *see also* ECF No. 48, PageID.510 (Ms. Brancheau's title)).

512; ECF No. 48-6; ECF No. 48-6, PageID.571-572).  In June 2015, UM arranged for Taylor to be seen by an independent medical specialist, Dr. Stanley S. Lee ("Dr. Lee").[7]  (ECF No. 50-12).  On June 15, 2015, Dr. Lee examined Taylor. Upon reviewing Taylor's medical history and medical paperwork, Dr. Lee concluded that Taylor does not "need[] any additional treatment, diagnostic testing, or activity restrictions as it pertains to the cervical spine."  (ECF No. 48-8, PageID.605).  Accordingly, Dr. Lee recommended that Taylor "return to work in an unrestricted capacity as it pertains to the cervical spine."  (*Id.*)

C. Taylor's Return to Work on June 24, 2015

On June 24, 2015, Taylor returned to work.  (ECF No. 48-9, PageID.609). That same day, while working as a light duty specialist, he complained of pain in his neck, shoulder, and across his left clavicle.  (*Id.*)  He also complained of a headache.  (*Id.*)  Taylor requested medical attention and was taken to UM's Emergency Room.  (*Id.*; *see also* ECF No. 48-6, PageID.573).  The attending physician at UM's Emergency Department, Dr. Cody Soyk, concluded that Taylor could return to work on June 28, 2015 with no medical restrictions.  (ECF No. 48-9, PageID.610).

---

[7] Both the Sick Time Pay section of UM's Standard Practice Guide and the AFSCME collective bargaining agreement provide authority for referring an employee to an independent medical examiner.  (*See* ECF No. 48-8, PageID.586; ECF No. 48-8, PageID.597).

D. <u>Taylor's Fall on July 1, 2015 and the Events Leading to His Termination</u>

On July 1, 2015, Taylor returned to work, but that same day he tripped on a vacuum cord and fell into a nearby wall and down the stairs onto the landing. (ECF No. 48-10, PageID.613).  He told his supervisors that he landed on his left hand, wrist, and elbow and that the impact of the fall affected his shoulder.  (*Id.*)

On July 6, 2015, Taylor called in to say that he had seen his personal physician, Dr. Lehrer, who excused Taylor from work until a date "to be determined."  Two days later, he presented paperwork from Dr. Lehrer which, among other things, excused him from work indefinitely.  (ECF No. 48-6, PageID.573).  Taylor also informed his supervisor, Ken Sawicki, that he had spinal surgery scheduled for August 31, 2015 to fuse his C-4 and C-5 vertebrae.  (*Id.*)  Despite Dr. Leher's note, on July 10, 2015, Sabrina Garret-Owens, Associate Director for Labor Relations at UM, instructed UM's disability coordinator and Taylor's supervisors to request that Taylor return to work for his next shift based on Dr. Lee's IME report.  (ECF No. 48-6, PageID.577).

When Taylor did not report to work as instructed, UM scheduled a Disciplinary Review Conference ("DRC") for July 17, 2015.[8]  Taylor presented a

---

[8] At first, UM contemplated a DRC based on its concerns of fraud.  On July 8, 2015, Ms. Garret-Owens sent an email stating: "Since there were never any witnesses to these falls, he may be faking[;] therefore[,] I may pursue a DRC for attempting to defraud [UM], unless you think I'm off base."  (ECF No. 50-9, PageID.969-970; *see also* ECF No. 51-2, PageID.1090 (providing Ms. Garret-Owens's position within UM)).  Thereafter, on July 10, 2015, Ms. Garret-Owens, citing Dr. Lee's opinion, wrote that if Taylor failed to return to work, "we will schedule a DRC

note at the DRC Hearing stating that he was scheduled for surgery with Dr. Daniel Park on August 31, 2015.  (ECF No. 48-11, PageID.616; *see also* ECF No. 50-13, PageID.1015 (Dr. Park's note)).  Afterward, UM requested further information from Dr. Park, which it received on August 13, 2015.  (ECF No. 48-11, PageID.616-619).  UM then forwarded Park's information to Dr. Lee, who stated via letter dated August 17, 2015 that his original opinion remained unchanged.  (ECF No. 48-11, PageID.620).  Dr. Lee also stated that he did not find anything in Taylor's medical documentation to suggest that Dr. Park's surgical intervention would be helpful.  (*Id.*)

E. Taylor's Discharge and Subsequent Grievance

By letter dated August 21, 2015, UM discharged Taylor effective August 26, 2015.  (ECF No. 48-12, PageID.622).  The letter informed Taylor that Dr. Lee, after reviewing supplemental medical documentation from Dr. Park, did not change his medical opinion of Taylor's condition.  (*Id.*)  Accordingly, UM stated that Taylor's employment was terminated due to his failure to provide "sufficient medical documentation to sustain [his] absence."  (*Id.*)  UM also informed him that he was not eligible for re-hire in any capacity by the university.  (*Id.*)

---

for failing to follow [UM's] medical protocol, and attempting to defraud [UM]."  (ECF No. 50-9, PageID.972-973).  A DRC was held on July 17, 2015 based on Taylor's failure to follow UM's medical protocol.  (ECF No. 48-12, PageID.622).

Following his discharge, Taylor filed a grievance with his union, AFSCME

Local 1583.  (ECF No. 48-13, PageID.628).  On September 17, 2015, a Discharge

Appeal Hearing was conducted, at which AFSCME Local 1583 contended that

UM unjustifiably discharged Taylor for his alleged failure to follow UM's medical

protocol.  (*Id.*)  Specifically, the union argued that Taylor made several attempts to

supplement his medical documentation, but that UM had deemed these insufficient

to support his absence.  (*Id.*)  By letter dated September 30, 2015, UM denied

Taylor's appeal of his discharge.  (*Id.*)  Taylor's local union followed up by

sending his grievance to the Michigan AFSCME Council 25 to determine whether

it had merit for arbitration.  By letter dated April 12, 2016, Michigan AFSCME

Council 25 notified Taylor that his case was rejected for arbitration, concluding

that, "[t]he file as currently presented lacks information that the [e]mployer did not

have just cause to terminate [Taylor]."  (ECF No. 48-13, PageID.629).

F. <u>Dr. Lee's Reevaluation of Taylor</u>

Some fifteen months after Taylor's discharge, on November 28, 2016, Dr.

Lee reevaluated Taylor in relation to his worker's compensation claim and

concluded that his original opinions remain unchanged.  (ECF No. 50-15,

PageID.1023).  He specifically noted that Taylor "continuously blames [his]

Independent Medical Evaluation for his subsequent injury [on July 1, 2019] . . .

however, when compared to the emergency room note from August 24, 2015,[9]

there was direct conflict . . . [as that note] states that there was no specific work

injury upon returning to work." (*Id.*)  Dr. Lee concluded that he did not find "any

work exposure causing any injury in any way to [Taylor]" and that any medical

care he received after June 15, 2015[10] "would not be considered medically

necessary or related to his employment." (*Id.*)

G. Taylor's EEOC Charge

On June 6, 2016, Taylor filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"), alleging that UM denied him a

reasonable accommodation for his disability and discharged him due to his

disability. (*See* ECF No. 16-1, PageID.95).  On February 9, 2017, the EEOC

issued Taylor a right-to-sue letter in which it indicated that after conducting its

own investigation it was unable to conclude that UM had violated the applicable

statutes. (*See* ECF No. 51-12, Page ID.1293).  Thus, Taylor has exhausted his

administrative remedies, and this matter is ripe for a determination by this court.

---

[9] This date appears to be a scrivener's error.  Dr. Lee did not review any emergency room notes from August 24, 2015; in fact, there is no evidence in the record to suggest that Taylor visited the emergency room on that date. (*See* ECF No. 50-15, PageID.1020-1022).  Dr. Lee did specify, however, that he reviewed an emergency room note dated **June** 24, 2015. (ECF No. 50-15, PageID.1021-1022).  Accordingly, the note to which Dr. Lee apparently refers is the June 24, 2015 emergency room note, prepared by Dr. Soyk.

[10] Dr. Lee first evaluated Taylor on June 15, 2015.

## III.   ANALYSIS AND CONCLUSION

A. Standard of Review

Summary judgment is appropriate under Rule 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (a) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. Pro. 56(b(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the Sixth Circuit stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

B. Rehabilitation Act of 1973

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance

. . . ." 29 U.S.C. § 794(a).[11]  To prevail on a claim for discrimination under the Rehabilitation Act, a plaintiff must show that: (1) he is an individual with a disability; (2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) he was discharged solely by reason of his handicap.  *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

Because Taylor seeks to meet this burden by presenting circumstantial evidence of discrimination, this court applies the familiar three-step burden-shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  *Jones*, 488 F.3d at 403-404.  The initial burden rests with the plaintiff to establish a *prima facie* case of discrimination.  *Id.* at 404.  If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision.  *Id.*  Should the employer carry this burden, then the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination.  *Id.*  In the

---

[11] The standards used to determine whether there has been employment discrimination under the Rehabilitation Act "shall be the standards applied under [T]itle I of the Americans with Disabilities Act of 1990 . . . ."  29 U.S.C. § 794(d).  Accordingly, "cases construing one statute are instructive in construing the other."  *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997).

instant case, Taylor can defeat summary judgment only if his evidence is sufficient to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.  *Id.*

       i.    *Prima Facie* Case

To establish a *prima facie* case of disability-based discrimination under the Rehabilitation Act, a plaintiff must establish each of the following five elements: (1) that he is disabled; (2) that he is otherwise qualified for the job, with or without reasonable accommodation; (3) that he suffered an adverse employment action; (4) that his employer knew or had reason to know of his disability; and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open.  *Jones*, 488, F.3d at 404.

UM argues that it is entitled to summary judgment on Taylor's sole claim because he is not a qualified individual with a disability.[12]  (ECF No. 48, PageID.517-523).  To this end, UM states that Taylor conceded at his deposition on May 2, 2019 that he was not otherwise qualified for the position, because he

---

[12] While UM references Dr. Lee's IME finding that Taylor was able to return to work, it does not directly attack the existence of disability – perhaps in recognition of the presence of evidence in the record to support this element.  Thus, whether or not it intended to challenge the existence of disability, any argument in that regard is at best underdeveloped.  "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *Id.*  Therefore, the undersigned accepts the first prong of plaintiff's *prima facie* case as uncontested and limits this portion of the court's analysis to the question of whether Taylor is a qualified individual with a disability as defined above.

failed to identify, with specificity, a reasonable accommodation.  (*Id.*)

Specifically, Taylor admitted as follows:

> Q: [I]s there any accommodation that you can think of
> that would have enabled you to perform—to keep
> working as a Custodian II, which was your job—
>
> A: No.

(ECF No. 48-3, PageID.540).  Thus, UM argues that the only reasonable

accommodation available to Taylor would have been a transfer to a vacant position

for which he was qualified.  (ECF No. 48, PageID.519).  But, relying on *Burns v.*

*Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 258-59 (6th Cir. 2000) and *Cross v.*

*Postmaster General of the United States*, 696 Fed. App'x  92 (3rd Cir. 2017), UM

argues that Taylor has failed to identify any particular position or positions to

which he could have been transferred, thereby failing to meet his burden of

production.[13]  (ECF No. 48, PageID.519-521).  UM concludes that Taylor's own

assertions that he was disabled, i.e. unable to perform *any* work, bolster UM's

---

[13] Taylor testified that he spoke with his supervisor, Ms. Zarza, about taking a job in the parking lot booth (ECF No. 50-2, PageID.789), and that there are "20 or 30,000 different jobs at the University, [and] I can point all—I can point to you all the ones that would be in my pay grade that I would have been able to do . . . ." (*id.* at PageID.783).  (The undersigned has elected to cite to Taylor's version of the deposition transcript, as UM neglected to provide all relevant pages of same as an exhibit.)  UM argues that this testimony is insufficient for Taylor to meet his burden of production, as he presented no evidence that any such jobs were available and vacant or that he was eligible to occupy them.  (ECF No. 48, PageID.521).

argument that he has failed to state a *prima facie* case.[14]  (ECF No. 48,

PageID.522-23).

In response, Taylor argues that there were two reasonable accommodations

available to him: (1) a medical leave of absence;[15] and (2) transfer.  (ECF No. 50,

PageID.758).  With respect to the former, Taylor, citing *Rentz v. William*

*Beaumont Hosp.*, 195 F. Supp. 3d 933, 946-47 (E.D. Mich. 2016), and *Judge v.*

*Landscape Forms, Inc.*, Fed. Appx. 403 (6th Cir. 2014), argues that a request for a

medical leave of absence made prior to termination is a reasonable

accommodation.  (*Id.*)  With respect to the latter, Taylor argues that, in contrast to

*Burns*,[16] UM's internal policy did not require an employee to locate and/or apply

for a vacant position.  (ECF No. 50, PageID.763 (citing ECF No. 50-4)).[17]  Taylor

---

[14] Specifically, in his deposition, Taylor stated, in response to the question "would it be correct for me to say that you didn't make very much of an effort to obtain employment because you didn't feel like you could perform the employment?", Taylor responded, "Well, I'm on disability, so I can't perform the employment."  (ECF No. 50-2, PageID.799).  UM also argues that Taylor made similar assertions in his answers to interrogatories.  (ECF No. 48, PageID.522). However, UM has not attached said answers as an exhibit.

[15] UM contends that, to the extent Taylor seeks to state a claim for denial of disability benefits, such a claim cannot be asserted at this juncture.  (ECF No. 48, PageID.523). Specifically, UM argues that neither Taylor's original nor amended complaint states a state law contract claim pertaining to the alleged denial of long term disability benefits.  (*Id.* at PageID.524-525).  Moreover, Taylor never applied for long-term disability benefits, in violation of UM's internal policies.  (*Id.* at PageID.525).  Addressing this argument, Taylor argues that UM has mischaracterized Taylor's claim.  Taylor contends that he highlights this issue not to challenge the benefits as articulated in the CBA but rather to demonstrate that UM's failure to provide him these benefits constitutes an adverse employment action.  (ECF No. 50, PageID.759-760).

[16] 222 F.3d at 258-59.

also argues that UM's reliance on a First Circuit case[18] is misguided because there are several Sixth Circuit cases supporting the proposition that it is the employer's responsibility to find an alternative position that may be suitable for a disabled employee.[19]

In reply, UM reiterates that Taylor has failed to state a *prima facie* case for discrimination due to his failure to identify the particular job or jobs to which he could have been transferred.  (*See* ECF No. 52, PageID.1363).  UM argues that the cases on which Taylor relies in his response, namely *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974 (6th Cir. 2011), *Smith v. Ameritech*, 129 F.3d 857, 868 (6th Cir. 1997), *EEOC v. OhioHealth Corp.*, 2104 U.S. Dist. LEXIS 148980 (S.D. Ohio, 2014), and *Coulson v. Goodyear Tire & Rubber Co.*, 31 Fed. Appx. 851 (6th Cir. 2002), stand for the proposition that it is Taylor who bears the burden of production with respect to the availability of alternative positions.  (ECF No. 52, PageID.1363-1364).

---

[17] In fact, UM's policy is silent with respect to which party bears the responsibility for locating and applying for a transfer in such circumstances.  (*See* ECF No. 50-4, PageID.818).

[18] *Cross v. Postmaster General of the United States*, 696 Fed. App'x 92 (3d Cir. 2017), on which UM relies, is a Third Circuit case.

[19] Specifically, Taylor cites *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997), *EEOC v. OhioHealth Corp.*, 2014 U.S. Dist. LEXIS 148980 (S.D. Ohio Oct. 20, 2014), and *Coulson v. Goodyear Tire & Rubber Co.*, 31 Fed. App'x 851, 857 (6th Cir. 2002).

The undersigned concludes that UM has demonstrated that Taylor has not established that he is a qualified person with a disability, and Taylor has not countered with evidence sufficient to create a genuine dispute of material fact as to whether he satisfied this prong of the *prima facie* case.  To be "otherwise qualified" for the job, the employee bears the burden of showing he can perform the "essential functions" of the job, with or without accommodation.  *Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 983 (6th Cir. 2011) (citing 42 U.S.C. § 12111(8); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456 (6th Cir. 2004)); *see also Smith v. Ameritech*, 129 F.3d 857, 868 (6th Cir. 1997) ("Because plaintiff failed to propose an objectively reasonable accommodation for his disability, and because it is undisputed that plaintiff could not perform the essential functions of his position, we conclude that he has failed to create a genuine issue regarding whether he was an otherwise qualified individual with a disability."). Taylor conceded at his deposition that there were no accommodations that could be provided that would allow him to perform the essential functions of the Custodian II position:

> Q: [I]s there any accommodation that you can think of that would have enabled you to perform—to keep working as a Custodian II, which was your job—
>
> A: No.

(ECF No. 48-3, PageID.540).   Taylor argues that the above exchange is not fatal to his case because he "identified the requested reasonable accommodations of being transferred to another position; and/or for some time off so that he could heal after surgery."[20]   (ECF No. 50, PageID.757-758).   Although Taylor is correct that, in general, whether an accommodation is reasonable is a question of fact for the jury (*see* ECF No. 50, PageID.758), certain accommodations are unreasonable as a matter of law.   With respect to medical leave, at the time of his termination, he had been on and off of medical leave for a period of two years.[21]   Approximately two weeks before his DRC hearing, Taylor presented paperwork from his personal physician, Dr. Lehrer, excusing him from work for an *indefinite* period.  (ECF No. 48-6, PageID.573).   The fact that Taylor's proposed leave was for an indefinite period is problematic; although a limited medical leave of absence can constitute a reasonable accommodation,[22] an indefinite medical leave of absence cannot.   *See Walsh v. UPS*, 201 F.3d 718, 726-27 (6th Cir. 2000); *White v. Honda of Am. Mfg.,*

---

[20] The undersigned finds that Taylor's discussion of a medical leave of absence does not pertain to a separate state-law contract claim, but rather concerns one of the accommodations he allegedly sought.

[21] Taylor never requested long-term disability benefits.  (ECF No. 48, PageID.525).

[22] *See Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782-83 (6th Cir. 1998) (finding a genuine issue of material fact as to whether an eight-week leave of absence followed by a request for an additional one-month leave was a reasonable accommodation under the ADA).

*Inc.*, 191 F. Supp.2d 933, 951 (S.D. Ohio 2002) (citing *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996), overruled on other grounds, *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314-15 (6th Cir. 2012)). Accordingly, Taylor's argument fails as a matter of law.

Turning to Taylor's other proposed accommodation—transfer—he correctly points out that an employer has a duty under the Rehabilitation Act to consider transferring a disabled employee who can no longer perform his old job, even with accommodation, to a new position for which that employee is otherwise qualified. *Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000). However, "prior decisions of this court hold that an employee has the burden of identifying particular positions to which he could be reassigned based on his qualifications." *Burns*, 222 F.3d at 259; *see also Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633-35 (6th Cir. 1998) (affirming judgment for the defendant because, in proposing "only general and vague accommodations, such as a transfer to a position in an allergen-free environment," the plaintiff did not satisfy her burden of proving that there was a position within the company for which she was qualified and to which reassignment would have been a reasonable accommodation).

Taylor argues that the holding in *Burns* is limited to the facts of that case. (ECF No. 50, PageID.763). Specifically, he contends that, in contrast to UM, the *Burns* employer had a policy that required an employee to apply for a transfer

20

within his or her medical restrictions, whereas UM has no such policy.  (*Id.*)

Taylor's efforts to distinguish *Burns* are unpersuasive.  *Burns* held that it is the

employee's burden to "propose, or apply for, particular alternative positions for

which they are qualified."  *Burns*, 222 F.3d at 258.  In so holding, *Burns*

referenced the Seventh Circuit cases *of DePaoli v. Abbott Laboratories*, 140 F.3d

668, 670, 675 (7th Cir. 1998) and *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141

F.3d 667, 680-81 (7th  Cir. 1998) in observing that "[e]ven [these decisions],

which specifically require employers to make an affirmative effort to locate jobs

for disabled employees, hold that plaintiffs are not entitled to prevail on disability

discrimination claims if they failed to propose alternate jobs for which they

satisfied their employers' prerequisites and whose essential functions they could

perform."  *Id.*  Hence, notwithstanding Taylor's assertion to the contrary, *Burns's*

holding is not limited to the facts of that particular case.

Where, as here, an employee makes a "vague" request to transfer, he has not

sufficiently identified the alternative position or positions for which he is qualified.

*Cassidy*, 138 F.3d at 635 ("Plaintiff's proposed accommodation for essentially an

allergen-free workplace, which Defendant attempted to locate within the company,

was simply too vague to reasonably inform Defendant of a reasonable

accommodation, or was otherwise simply unavailable.").  Here, Taylor's request

for a transfer was, indeed, vague.  When asked at his deposition what type of

transfer would constitute a reasonable accommodation, Taylor responded:

> [T]here's 30,000 jobs at the University.  Whatever, 20 or
> 30,000 jobs at the University.  I can point all—I can point
> to you all of the ones that would be in my pay grade that
> I would have been able to do, if you'd like.

(ECF No. 48-3, PageID.540).  Taylor also stated at his deposition that he spoke

with a supervisor, Ms. Zarza, about taking a job in the parking lot booth.  (ECF No.

50-2, PageID.789).  However, Taylor has not proffered any evidence that he

applied for this position or that he was qualified for it.  Nor has he presented any

such information for the "20 or 30,000" other positions to which he alluded in his

deposition.  Because Taylor failed to identify any particular position or positions

for which he was both qualified and sought transfer, he has failed to create a

genuine dispute of material fact as to whether he was "otherwise qualified" for the

position of Custodian II.  Accordingly, Taylor's claim cannot survive summary

judgment, as he has failed to create a genuine dispute concerning this aspect of the

*McDonnell Douglas* inquiry.

      ii.   <u>Pretext</u>

Even were the court to conclude that a genuine issue of material fact exists

as to one or more elements of Taylor's *prima facia* case, UM argues, and Taylor

does not dispute, that it has articulated a legitimate, non-discriminatory reason for

Taylor's termination.  More particularly, the university argues that it based its

decision to terminate Taylor on Dr. Lee's IME reports stating that Taylor was able to return to work without any restrictions. (*See* ECF No. 50-12, PageID.1013). Taylor was ultimately terminated because he failed to provide "sufficient medical documentation" to alter Dr. Lee's opinion of his condition. (ECF No. 48-12, PageID.622). In the alternative, UM, citing the honest belief doctrine, argues that due to Dr. Lee's opinion, it honestly believed that Taylor could return to work with no restrictions. (ECF No. 48, PageID.522).

Taylor bears the burden of establishing pretext. *Jones*, 448 F.3d at 406. To satisfy this burden, a plaintiff must demonstrate, by a preponderance of the evidence, either (1) that the proffered reasons for the adverse employment action had no basis in fact; (2) that the proffered reasons did not actually motivate the discharge; or (3) that they were insufficient to motivate the discharge. *Id.* In the instant case, even if Taylor had made out a *prima facie* case or created a genuine dispute as to the first prong of the *McDonnell Douglas* inquiry, he failed to create a genuine dispute at the last stage.

In the effort to demonstrate pretext, Taylor first alleges that UM harbored discriminatory animus against him. (ECF No. 50, PageID.759). In support, he cites Ms. Donner's email, in which she stated that "[t]hese people are going to cost us all our jobs," and the fact that UM placed him under private investigator surveillance "no less than 10 times in an effort to prove that [he] was not

disabled."[23]  (*Id.*)  Second, Taylor argues that UM's reliance on Dr. Lee's findings was unreasonable because (a) his findings concerned the cause, rather than extent, of Taylor's injuries;[24] and (b) Dr. Lee himself lacked the requisite expertise to diagnosis Taylor's injuries.[25]  Third, Taylor contends that UM cannot rely on the honest belief doctrine.[26]  Fourth, Taylor argues that his designation as non-

---

[23] Although Taylor does not cite to the record, he has attached, as Exhibit 20, these investigatory reports.  (ECF No. 51-1).

[24] Specifically, Taylor argues that Dr. Lee's June 15, 2015 report concerned causation because Ms. Manyen, in an email dated May 13, 2015, implied that the purpose of Dr. Lee's examination was to "schedule for causation."  (*See* ECF No. 50-9, PageID.963).  Furthermore, Dr. Lee stated in his August 21, 2015 report that Taylor had "[n]o specific neck injury and no neck issues as it relates to his employment."  (ECF No. 50-15, PageID.1023).

[25] In making this argument, Taylor relies on the findings of Magistrate Williams from Taylor's worker's compensation proceeding.  (ECF No. 50, PageID.760).  Specifically, Taylor quotes the following finding from Magistrate Judge Williams' opinion:

> As was evident by the voire dire of Dr. Lee by Taylor['s] counsel during his deposition[,] this this [sic] physician[,] while an orthopedic surgeon, has given little if any time or portion of his practice to the diagnosis, treatment and surgery of shoulders . . . . His primary if not entire focus centers upon the spine and conditions involving this area of anatomy . . . This fact alone renders an opinion as to diagnosis, prognosis and restrictions or lack thereof as it relates to [the shoulder], at least in connection with this first examination, to be of virtually no value in this respect.

(ECF No. 50, PageID.752).

[26] Although this argument is not fulsome, it is the undersigned's understanding that the crux of Taylor's argument is that UM cannot satisfy the requirements of the honest belief doctrine because UM terminated Taylor with the knowledge that at least one medical professional (Taylor's surgeon) disagreed with Dr. Lee's assessment of Taylor's condition. (ECF No. 50, PageID.761-762).

rehireable shows pretext because he did not engage in the type of conduct that would warrant non-rehireable status.[27]  (ECF No. 50, PageID.756-757, 759-760). Last, Taylor argues that UM's failure to consider him for long-term disability leave and/or a medical leave of absence is evidence of pretext.  (ECF No. 50, PageID.759).[28]

---

[27] In making this argument, Taylor relies on the deposition testimony of Ms. Donner, who stated that employees are deemed non-rehireable "when there's . . . violence in the workplace, stuff like that.  Falsification of documentation, theft, those are some of the things that I know for a fact."  (ECF No. 50-7, PageID.896).  The undersigned notes that, Ms. Donner, in response to the same question, also said that "I mean, there's more [reasons why an employee could be deemed non-rehireable].  Certainly HR could answer that question for you."  (*Id.*)

[28] In the factual background section of his brief, Taylor alleges that UM deviated from its ADA and accident investigation policies in the instant case.  (*See* ECF No. 50, PageID.742-744, 747).  It is unclear why Taylor has included these facts in his brief.  To the extent that Taylor does so to show pretext, these arguments are unpersuasive.  Taylor concedes that UM's ADA policy requires that an individual seeking an accommodation must first request such an accommodation.  (ECF No. 50, PageID.743).  As discussed above, Taylor failed to apply for a medical leave of absence and failed to identify the particular alternative positions for which transfer would be appropriate.  Thus, UM did not deviate from its established ADA policy.  With respect to UM's accident investigation policy, Taylor has failed to create a genuine dispute of material fact as to whether any such deviation therefrom constituted pretext.  Taylor cites the deposition testimony of Angela Nortley, a supervisor in UM's Work Connections department, which oversees the administration of cases pertaining to occupational and nonoccupational injuries.  (*See* ECF No. 50-6, PageID.837).  Ms. Nortley testified that each time an individual suffers a "new injury," her department begins anew the process of making referrals to independent medical examinations.  (ECF No. 50-6, PageID.851).  Taylor's injury was not treated as a "new injury."  (ECF No. 50-9, PageID.977).  However, Taylor has failed to provide any evidence that this fact, standing alone, constitutes pretext.

In his discussion of UM's alleged deviation from its ADA policy, Taylor also asserts that Ms. Nortley perjured herself during her deposition.  (ECF No. 50, PageID.744).  (Specifically, Ms. Nortley testified that she did not review any of Taylor's medical notes, but in an email dated July 15, 2015 (ECF No. 50-6, 848), she said that she had reviewed Taylor's file and email notes (ECF No. 50-9, PageID.974-975).)  It is unclear to the undersigned why Taylor has included this fact in his brief.  Nevertheless, because this fact is irrelevant to whether UM violated its ADA policy, the undersigned considers it no object.

In response, UM contends that Ms. Donner's email was drafted nearly two years before Taylor's termination, and Ms. Donner herself did not terminate Taylor.  (ECF No. 52, PageID.1365).  With respect to the issue of surveillance, UM points out that these reports are dated from 2016-2018, one to three years after Taylor's termination, and were prepared in connection with Taylor's worker's compensation proceeding.  (ECF No. 52, PageID.1366).  Turning to Taylor's arguments pertaining to Dr. Lee's reports, UM contests Taylor's reliance on the opinion of Magistrate Judge David H. Williams, who presided over Taylor's worker's compensation case.[29]  (*Id.*)  Specifically, UM argues that even assuming, for the sake of argument, that Magistrate Judge Williams' opinion constitutes admissible evidence, Taylor's arguments rest on the proposition that his supervisors and managers should have anticipated in August 2015 that a judge "would feel differently about what Dr. Lee had to say than what Dr. Lee reported to [UM] in June 2015 and August 2015."  (ECF No. 52, PageID.1366-1367).

The undersigned concludes that Taylor failed to create a genuine issue of material fact as to whether UM's purported reason for his termination was a pretext for illegal discrimination.  Turning to Taylor's first argument, Ms. Donner was

---

[29] Magistrate Judge David H. Williams sits on the Worker's Compensation Board of Magistrates, which is a division of the State of Michigan, Department of Licensing and Regulatory Affairs, Michigan Administrative Hearing System.  (*See* ECF No. 51-4, PageID.1117, 1234).

Taylor's manager, but no evidence has been presented that she terminated Taylor.

For this reason, Taylor appears to rely on a cat's paw theory of liability.[30]  The

Supreme Court has defined the "cat's paw" theory of liability as follows: "if a

supervisor performs an act motivated by [discriminatory] animus that is intended

by the supervisor to cause an adverse employment action, and if that act is a

proximate cause of the ultimate employment action, then the employer is

liable . . . ."  *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (internal footnote

omitted).  Assuming without deciding that the cat's paw doctrine is applicable to

Rehabilitation Act claims, Taylor has failed to put forth sufficient evidence that

Ms. Donner's comments influenced or otherwise affected UM's decision to

discharge Taylor.  Other than Ms. Donner's stray comment,[31] which was made two

---

[30] The undersigned notes, however, that the cat's paw doctrine is not discussed in any of the moving papers.

[31] To the extent Taylor seeks to assert a hostile work environment claim, *see supra* at 2-3, such an argument is not persuasive.  To state a *prima facie* case for hostile work environment, a plaintiff must allege that: (1) he was a member of a protected class, (2) he was subjected to unwelcome harassment based on membership in that class, (3) the harassment created a hostile work environment, and (4) the employer is liable.  *Hafford v. Seidner*, 183 F.3d 506, 512-13 (6th Cir. 1999).  A hostile work environment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The Sixth Circuit has found that comments that are temporally and topically distant from some employment action do not tend to show that an impermissible motive affected the contested action.  *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025-26 (6th Cir. 1993).  Accordingly, Ms. Donner's stray comment, made two years before Taylor's termination, is insufficient to create a genuine issue of material fact with respect to a hostile work environment claim.

years prior to Taylor's termination, Taylor does not point to any other evidence that UM harbored discriminatory animus toward him.[32]

With respect to Taylor's second argument, Taylor contends that UM's reliance on Dr. Lee's reports was unreasonable because they addressed the cause, rather than extent, of Taylor's injuries.  (ECF No. 50, PageID.760).  Taylor is correct that Dr. Lee's *reevaluation* did address the cause of Taylor's injuries.[33] However, this report was prepared *over a year after* Taylor's termination. Moreover, Dr. Lee's initial report, which was prepared prior to Taylor's termination and was one of the reports on which UM relied in making its decision to terminate Taylor's employment,[34] did not address the cause of Taylor's injuries. Rather, contrary to Taylor's assertion, it did address their extent; specifically, Dr. Lee, after discussing the extent of Taylor's injuries,[35] expressly found that Taylor

---

[32] Taylor's reliance on UM's surveillance reports is not persuasive, as the information contained therein was gathered well after Taylor's termination.  (*See* ECF No. 51-1).  Moreover, to the extent Taylor seeks to rely on prior lawsuits against UM involving ADA claims as evidence of discriminatory animus, such is not relevant to the instant case.  (*See* ECF No. 50, PageID.741).  Accordingly, the undersigned concludes that Taylor has set forth insufficient evidence to demonstrate discriminatory intent.

[33] Specifically, Dr. Lee stated in his August 21, 2015 report that Taylor had "[n]o specific neck injury and no neck issues as it relates to his employment."  (ECF No. 50-15, PageID.1023).

[34] The two reports being Dr. Lee's initial evaluation, dated June 15, 2015 (*see* ECF No. 48-8, PageID.602-606), and his letter, dated August 17, 2015 (*see* ECF No. 48-11, PageID.620).

[35] Specifically, Dr. Lee concluded as follows:

> Based on the MRI report from April 16, 2015, osseous, ligamentous or neurologic injury was ruled-out.  There is no

"may return to work as a custodian full time at this point without restrictions."

(ECF No. 50-12, PageID.1013).  Even assuming, for the sake of argument, that the

purpose of the examination was to determine the cause of Taylor's injuries,[36]

Taylor's assertion that Dr. Lee's initial report did not address the extent of his

injuries is factually inaccurate.

Taylor also argues that UM's reliance on Dr. Lee's reports was unreasonable

because Dr. Lee lacked the requisite expertise to render a medically accurate

opinion on Taylor's condition.  (*See* ECF No. 50, PageID.760-761).  In making

this assertion, Taylor relies on the findings of Magistrate Judge Williams, whose

opinion was rendered in Taylor's related worker's compensation case.  (*See* ECF

No. 50, PageID.752-753).  Even if Magistrate Judge Williams's findings constitute

persuasive authority in this court, Taylor has not provided the documentation on

---

> evidence of any post-traumatic pathology; therefore, he could not
> have sustained significant injury to the spine.  Had he sustained
> any injury at any point after the accident, this would have been
> limited to a soft tissue strain.  Based on the elapsed time from the
> date of injury as well as the lack of objective findings on my
> physical examination and on the diagnostics, I do not find that he
> needs any additional treatment, diagnostic testing or activity
> restrictions as it pertains to the cervical spine.  I would recommend
> that he return to work in an unrestricted capacity as it pertains to
> the cervical spine.

(ECF No. 50-12, PageID.1012).

[36] Ms. Manyen, in an email dated May 13, 2015, implied that the purpose of Dr. Lee's
examination was to "schedule for causation."  (*See* ECF No. 50-9, PageID.963).  Taylor argues
that this email demonstrates that the purpose of Dr. Lee's examination was to determine the
cause of Taylor's injuries.  (ECF No. 50, PageID.745, 760).

which Magistrate Judge Williams relied in making his findings.  As stated above, *see supra* n.25, Magistrate Williams, in finding that Dr. Lee lacked expertise in shoulder injuries, relied on Lee's deposition.  Although Taylor has attached his own deposition transcript and the deposition transcripts of various UM employees, he has not provided Lee's deposition transcript.  Accordingly, Taylor has not provided the court with sufficient information to make a determination as to Dr. Lee's expertise in the area of shoulder injuries.

Furthermore, even if Taylor had shown that Dr. Lee is not a shoulder expert, he has failed to create a genuine dispute of material fact as to whether UM's reliance on his opinion would be unreasonable, particularly in light of the fact that the medical documentation he produced from Dr. Park at his DRC concerned his purported incapacity relating to issues with his cervical spine and Dr. Park's intention to operate on his cervical spine.  Taylor acknowledges, in citing Magistrate Williams' opinion, Dr. Lee's expertise in spinal injuries.  (*See* ECF No. 50, PageID.752).  In addition to shoulder pain, Taylor also complained of injuries to his neck and back.  (*See* ECF No. 48-4, PageID.545 (August 2013 injury); ECF No. 50-2, PageID.785-787 (July 2014 injury); ECF No. 48-10, PageID.613 (July 2015 injury)).  Accordingly, Taylor has failed to create a genuine dispute of material fact as to whether UM's reliance on Dr. Lee's opinion was unreasonable.

Turning to Taylor's third argument, Taylor appears to contend that UM cannot rely on the honest belief doctrine because UM terminated Taylor with the knowledge that at least one medical professional (Taylor's surgeon) disagreed with Dr. Lee's assessment of Taylor's condition.  (ECF No. 50, PageID.761-762). Under the honest belief doctrine, summary judgment may be granted on the basis of an employer's "honestly-believed" reason for taking an employment action, even if that reason is shown to be "mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).  "[T]he employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 807.  Once the employer has met its burden, "the employee has the opportunity to produce proof to the contrary."  *Id.* The Sixth Circuit has noted that the "honest belief" doctrine does "not require that the decisional process used by the employer be optimal or that it left no stone unturned," but "it must be reasonably informed and we will not blindly assume that an employer's description of its reasons is honest."  *Stewart v. Kettering Health Network*, 576 Fed. Appx. 518, 523 (6th Cir. 2014) (*quoting Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707-08 (6th Cir. 2006)).  UM has demonstrated that it reasonably relied on Dr. Lee's opinions of Taylor's condition.  *See supra* at 30. Although Taylor has argued that Dr. Lee is not an expert in shoulder injuries, he has failed create a genuine dispute of material fact as to this issue.  *See supra* 29-

30.  Accordingly, Taylor has failed to "produce proof to the contrary," rendering his argument unpersuasive.

Turning to Taylor's fourth argument, the fact that Taylor was deemed non-rehireable does not create a genuine dispute of material fact.  (ECF No. 50, PageID.760-761).  Although Ms. Donner testified in her deposition that an employee can be deemed non-rehireable for a variety of reasons, including violence in the workplace, falsification of documentation, and theft,[37] she made clear that this list was not exhaustive.  Accordingly, UM's reason for deeming Taylor non-rehireable[38] does not, by itself, create a genuine dispute of material fact.

With respect to Taylor's last argument, namely that UM failed to consider Taylor for long-term disability leave and/or a medical leave of absence, such does not create a genuine dispute of material fact.  A medical leave of absence can, in certain circumstances, constitute a reasonable accommodation.  *See supra* n.22.

---

[37] Ms. Donner testified during her deposition that employees are not rehireable "when there's certain things, but—for staff, violence in the workplace, stuff like that.  Falsification of documentation, theft, those are some of the things that I know for a fact."  (ECF No. 50-7, PageID.896).  Importantly, she immediately thereafter stated "That's it.  I mean, there's more [reasons why an employee could be deemed non-rehireable].  Certainly HR could answer that question for you."  (*Id.*)

[38] Taylor argues that the cause of Taylor's termination was his disability.  (ECF No. 50, PageID.760).  Although Taylor's disability was a but-for cause of his termination, the reason for Taylor's termination was Dr. Lee's conclusions pertaining to Taylor's condition, as contained in his reports, and Taylor's failure to provide any documentation that would have altered same. (*See* ECF No. 48-12, PageID.622).

However, the fact that Taylor did not receive the accommodation he sought,[39] does not, standing alone, create a genuine dispute of material fact.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned finds that Taylor has failed to create a genuine dispute of material fact as to whether that he was otherwise qualified for the position of Custodian II.  Accordingly, it is **RECOMMENDED** that UM's motion for summary judgment be **GRANTED**.

Date:  December 16, 2019                         s/Stephanie Dawkins Davis
                                                Stephanie Dawkins Davis
                                                United States Magistrate Judge

---

[39] An accommodation which the undersigned has found to be unreasonable as a matter of law.